UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ADVANCED REHABILITATION, LLC,<br>IRBY SPINE CENTER,PC and SHORE<br>SPINE CENTER & PHYSICAL<br>REHABILITATION, PC, on behalf of<br>themselves and others similarly situated<br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC.,<br>UNITED HEALTHCARE, UNITED<br>HEALTHCARE INSURANCE<br>COMPANY, UNITED HEALTHCARE<br>SERVICE, LLC, OXFORD HEALTH<br>PLANS 9NJ0 INC., and OXFORD<br>HEALTH INSURANCE, INC.<br>Defendants | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 10-cv-00263 (DMC)(JAD) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion to dismiss by United Healthcare *et al* ("Defendants")  pursuant to Fed. R. Civ. P. 12(b)(6).  Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.  After considering the submissions of the parties, and based upon the following, it is the decision of this Court that Defendants' motion to dismiss is **granted**.

I.      **BACKGROUND**

This putative class action law suit is brought by four chiropractic providers, all of whom are out of network providers under the terms of health insurance plans managed by Defendants. Defendants administer health plans for numerous employers and governmental entities. The plans at issue in the instant complaint are New York State Health Insurance Program/Empire Blue Cross-

2

Blue Shield ("NYSHIP/BC-BS"), the Verizon/United Healthcare plan ("Verizon"), a plan administered on behalf of employees of the Port Authority of New York and New Jersey (PANYNJ), and an Oxford/Freedom Health Plan. The complaint alleges that each of the Plaintiffs performed a procedure known as manipulation under anesthesia ("MUA"), and that each was denied reimbursement because Defendants have a "blanket policy of denying coverage for MUA procedures" (ECF Doc. 32, page ID 1286) either on the grounds that the procedures are not medically necessary, at least for treatment of specific conditions, or that they are experimental for treatment of certain conditions. Plaintiffs also aver that the appeals process is "preordained to deny coverage." (ECF Doc. 32, page ID 1290). Each of the four chiropractic providers submitted claims on behalf of a patient who had been treated with MUA, and in each case the claim was denied, both initially, and through the subsequent appeals process. Plaintiffs raise claims under ERISA and State Law for breach of contract and breach of fiduciary duties, and request declaratory judgment and a permanent injunction enjoining Defendants from automatically denying coverage for MUA procedures.

II.      **LEGAL STANDARD**

         12(b)(6) Motion to Dismiss

         In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of

facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In Bell Atl. Corp. v. Twombly, the Supreme Court clarified the Fed. R. Civ. P. 12(b)(6) standard. See 550 U.S. 544, 555 (2007).  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  Bell, 550 U.S. at 558 (citing Conley, 355 U.S. at 45–46).  Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level."Bell, 550 U.S. at 555-56.

## III.  DISCUSSION

The relevant portions of the health plans at issue are summarized below.

A. NYSHIP/BC-BS

The NYSHIP/BC-BS plan(see Def. Exhibit 1, page 59-61, ECF Doc. 30-3) in pertinent part,  states the following under the heading "Limitations and Exclusions:"

> You are not covered for benefits by Empire Blue Cross Blue Shield...when any of the following apply to you
> (2) care must be medically necessary . Medically necessary care is care which, according to Empire Blue Cross Blue Shield criteria, is
> •    consistent with the symptoms or diagnosis and treatment of your condition, disease, ailment or injury;
> •    in accordance with generally accepted medical practice;
> •    not solely for your convenience or that of your doctor or other provider;
> •    the most appropriate supply or level of service which can be safely provided to you.
> [E]mpire Blue Cross Blue Shield's determination of medical necessity will be made after considering the advice of trained medical professionals.
> (12) Empire Blue Cross Blue Shield will not cover any treatment, procedure, drug, biological product or medical device (hereinafter "technology") if, in our sole discretion, it is not medically necessary in that such technology is experimental or

4

investigational. Experimental or Investigational means that the technology is:
A. Not of proven benefit for the particular diagnosis or treatment of your particular condition.

B. Verizon

The Verizon Plan states (see Def. Exhibit 2, page 5, ECF Doc. 30-4) , in relevant part, that:

> To determine medical necessity, United Healthcare considers if the service, supply or expense is:
> •       supported by national medical standards of practice
> •       consistent with medical research that concludes the service has a beneficial effect on health outcomes, based on testing and studies
> •       The most cost-effective method and results in an outcome consistent with other available alternatives.

C. PANYNJ

The PANYNJ Plan (see Def. Exhibit 3, page 13, ECF Doc. 30-5), states, in relevant part,

under the heading "Medical Benefits"that:

> A Covered person and his or her Physician decide which services and supplies are given, but these Plans only pay for the following Covered Services which are Medically Necessary as determined by the Company.

Page 51 of the same document states:

> The fact that a Physician has performed or prescribed a procedure or treatment or the fact that it may be the only treatment for a particular injury, sickness, mental illness or pregnancy does not mean that it is a Medically Necessary service or supply as defined above. The definition of Medically Necessary used in this booklet relates only to coverage and differs from the way in which a physician engaged in the practice of medicine may define medically necessary.

D. Oxford Plan

The Oxford Plan (Def. Exhibit 4, page 17, ECF Doc. 30-6)  states, in relevant part, that:

> Medical Necessity Determinations may be made after services are rendered. All services are subject to a review by US to determine the Medical Necessity of proposed services, services currently being provided, or services already provided. Denials will be made by the appropriate clinical personnel.

In addition to the health plans, Plaintiffs also reference The American Medical Association"s book of Current Procedural Terminology ("CPT"), which is published on an annual basis. These codes are used for providers and insurers to identify the procedures and services for which coverage is being sought, approved or denied. In the Introduction to the 2010 CPT book (Def. Exhibit 5, ECF Doc. 30-7), it states the following:

> Inclusion in the CPT codebook does not represent endorsement by the American Medical Association (AMA) of any particular diagnostic or therapeutic procedure. Inclusion or exclusion of a procedure does not imply any health insurance coverage or reimbursement policy.

The Court has made a detailed analysis of the health care plans at issue[1], while taking the allegations as pled in the light most favorable to Plaintiffs. Based on the Court's analysis, every single plan relevant to the complaint contains language reserving the right to make decisions about which procedures to cover, based on the plan's decision as to medical necessity, or the plan's determination as to what is experimental or investigative for a given ailment, illness or condition. All the plans contain detailed information about how to dispute the denial of coverage, and several make provision for external, independent review. Although the Court must accept, for purposes of this motion, that Plaintiff's allegations that denial of coverage for MUA procedures is systematic, Plaintiffs have not made the threshold showing that Defendants acted outside the scope of decision making that they were, by the terms of the plans, entitled to, or that their determinations were

---

[1]For purposes of this motion, the Court has examined the plan documents provided by Defendants with their motion, as well as the letters denying coverage that the Court requested pursuant to *In re Burlington Coat Factory Sec. Litig.* 114 F. 3d 1410 (3d Cir. 1997) and *Pension Benefit Guar. Corp. V. White Consol. Indus.,* 998 F. 2d 1192 (3d Cir. 1993), holding that the language of Fed. R. Civ P. 12(b)(6) "does not prohibit a district court from considering exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based on those documents."

arbitrary or capricious. Even if the case were allowed to proceed, and evidence bore out Plaintiff's contention, it would not be legally sufficient to rebut the plain meaning of what each plan reserves for itself to decide in the absence of some showing that the determinations made by the plan administrators was demonstrably flawed. Although only the NYSHIP-BC/BS policy actually uses the language, "in our sole discretion," all the plans force the Court to the same conclusion, which is that the plan administrators and the clinical personnel employed by the plans have significant authority to deny or approve coverage. The CPT codes on which Plaintiff's rely to prove that, objectively, the MUA procedure is medically necessary and not experimental or investigative is not availing, and is refuted by the language of the CPT code book itself, as previously detailed. Most importantly, as Defendants correctly point out, the fact that a procedure may be medically necessary and be assigned a CPT code  for one condition shows nothing about its necessity or appropriateness for another. There is no logical inference consistent with the standards for dismissal under Fed. R. Civ. P. 12(b)(6) that the Court can make based on the mere existence of CPT codes for MUA. Without that missing link, the Court can not find that Defendants violated their authority under either state law or ERISA, and thus there is no basis on which the Court could grant relief. Moreover, and most critically, Plaintiffs never allege that the procedures as described were either medically necessary or non-experimental for the conditions they were used to treat. Without that threshold averment, there is nothing upon which the Court can credit Plaintiff's assertion that the denials were all pretextual. Plaintiffs must allege something more than the existence of CPT codes to demonstrate that the MUA procedures, as performed on the representative sample of patients, met the conditions for coverage as defined in the governing health plans. Only if they met the conditions, and Plaintiffs could attest to the medical necessity of performing these procedures on these patients for these

afflictions would there be a threshold showing that the Court could credit. In the absence of that, the Court can find

nothing that plausibly suggests that Defendants acted arbitrarily or improperly in denying coverage for these procedures. The Court does not even know from the pleadings whether the patients were helped or harmed by the MUA procedures that were performed.

Plaintiffs make what amounts to a bare and conclusory allegation that the appeals process provided for in every plan is futile, and merely imposes an additional impediment on the ability of Plaintiffs to be reimbursed for necessary services they provided. Yet, at least one of the plans allows for independent, external review. In the case of Plaintiff Irby, for example, an appeal was made to Independent Medical Expert Consulting Services, Inc. (IMEDECS), and documentation was submitted to a three-member clinical peer review board, two of whom voted to uphold Defendant's denial of coverage. Plaintiff's averment that one of the review board members was biased is completely unsubstantiated. This was the second level of review of the denial of coverage. As the Court wrote in a case that, while factually different, raised an analogous issue, *U.S. v. University of Medicine* 2010 WL 4116966, 5 (D.N.J.) (D.N.J.,2010), "the fact that Plaintiff steadfastly disregards the conclusions of three separate investigations by two autonomous institutions is not evidence that Defendant [Howell] should have done the same." Here, the fact that external peer review ratified the denial of the internal eligibility review does not come close to demonstrating Plaintiff's contention that the appeal process is fixed or pre-ordained, and the Court need not conclude otherwise. It merely demonstrates that clinical reviewers not in the employ, nor under the control of Defendants agreed that the MUA procedure performed by one of the named Plaintiffs was medically unnecessary in that discrete instance. Since that decision was within the purview of Defendants to make, as per the terms

of the plan, and within the purview of the review board to affirm, the Court has no basis to conclude, as Plaintiff would suggest, that there was collusion or bad faith in the process. Moreover, there is nothing to suggest that the procedure for appeal is overly burdensome or unreasonable. All Plaintiffs have been able to demonstrate is that in these four instances, the denials were affirmed after appeal and review, both internal and external. That by itself is just not enough, even at this early stage of litigation.

It is hard to characterize the evidence of the denials of coverage as detailed in Plaintiffs' Amended Complaint as anything more than anecdotal. Despite the Court's mandate to view the facts in the light most favorable to Plaintiffs, the Court need not credit unsubstantiated legal conclusions. The Court need not reach Defendant's arguments concerning standing under the benefit-assignment clauses of the NYSHIP/Blue Cross and Oxford/Freedom plans, nor the considerations imposed by ERISA on the remaining two plans, since the Court finds the underlying allegation, that denials were arbitrary, capricious and systematic, and that appeals were futile, to be nothing more than legal conclusions supported by neither the terms of the plans nor the denial letters on which the complaint is based.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) is **granted**. An appropriate Order follows this Opinion.

 S/ Dennis M. Cavanaugh
DENNIS M. CAVANAUGH, U.S.D.J.

Date:   March   17 , 2011
cc:   Hon. Joseph A. Dickson, U.S.M.J.
        Counsel of Record